May it please the Court, I'm George Boisseau. I represent Sharee Hall. Good morning. We contest on several grounds the convictions on count the money laundering count, count five, and the wire fraud count three. But primarily the the money laundering account relies on proceeds and it's factually impossible for the that are alleged in count five to be the proceeds of count three because the money didn't go into the account until after the cashier's check was was negotiated. So it didn't clear the account until afterwards. As I understand the argument of opposing counsel from the briefs, they're arguing that there was plenty of evidence that the money in the account was from some wire fraud scheme and it wasn't necessary for Ms. Hall to be convicted of of those different elements of the scheme as long as there was enough evidence for the jury to find that her withdrawal of the $102,000 was from a scheme to commit wire fraud. So what what's wrong with that argument? Well, that argument relies on Rogers, which is factually different from this case. The defense in this case was the fact that Ms. Hall did not become part of the scheme until afterwards, if at all. So the timing is is important in this case because the there there were transfers, there are many transfers into her account, but the the evidence was ambiguous as to whether she did made the transfers or someone else made the transfers. But as long as the transfers were from the scheme, doesn't Rogers suggest that it doesn't really matter whether she was convicted of that or not? Well, yes, if the Rogers, the Mr. Rogers was part of the scheme from the very get-go. And so the argument, his argument was unavailing because it was clear that he was part of the scheme and the proceeds, even though not tied to those particular accounts, was part of his scheme and he was involved in it. But this case is different. Counsel, with respect, I it seems to me that you're you're asking us to be incredibly myopic. It may not be evidence of what she put in, but there's real evidence about what she took out. She would have had to know what was in there if she took it out because she had these transfers sent to her personal email address. She got gift cards that were transferred to a location near her house. And these are all things that the trier of fact could take into account to show that she knew perfectly well that the money was in there and she took it out. Well, but you would have to reconcile the acquittal on the other counts with that theory. And that's the that's not under Rogers, do you? And counts and counts one and two are their their transactions, the wire transfers that that at the last count, too, is January 9th. Now, she was acquitted of that count. And she was acquitted of count one. And she was also acquitted of count four for the money laundering. So I don't I'm having trouble with your argument because it seems like under the money laundering statute, it would apply equally to someone who is just a freelance money launder. And if people came to this money launder and said, here's our hundred thousand dollars, we just committed wire fraud and we want you to deposit it in the address, I mean, it wouldn't matter that he wasn't involved, that freelance my freelance money launderer, that he wasn't involved in the crime as long as he was it knew that it was from a criminal act and then he laundered it. So why doesn't that equally apply in this case? Well, that you would have to establish the knowledge. And I agree with the Court. But you'd have to establish the knowledge that this that Ms. Hall knew that these were proceeds as of the date that she negotiated that check. And that's what's lacking in this case. And this is what makes this case different from the Rogers case. Because it's her defense was, I didn't know. Well, what about the evidence that Judge Smith indicated, because we're looking at a sufficiency issue, that she had e-mails directed to an e-mail account that she testified was her account. And she knew that that wasn't her money, so she must have known that there was transfers to her account. Why is it why couldn't a jury believe that or rely on that? Well, but in fact, they didn't. They didn't. They acquitted her of several counts regarding that. The evidence was that. But counsel, again, with respect, she testified that her account never had more than $36,000 in it, and yet she got a cashier's check that she purchased for $102,000. I mean, even a first grader, even in today's schools would know that doesn't work. Well, I don't dispute the evidence that the people are talking about. There was evidence, but you can't reconcile the evidence and the findings by the jury. If the jury had found Counts 1 and Count 2 and Count 3 her guilty of that, then there would be no question of that. But they didn't. And so why couldn't the jury infer that because she all of a sudden had this cashier's check for over $100,000, isn't it perfectly reasonable for the jury to infer that she knew what the money was, even though she didn't participate originally in acquiring it? Well, that goes into the argument, the argument we have made that there's two prongs of this. First of all, we contend that vicarious liability unlawfully broadened the was a variance in this case because it was never charged in the indictment that there were others involved. But also the jury note that wasn't, we contend is not adequately answered, suggested the jury had questions as to when she actually joined the scheme and whether she was responsible for the activities of others before she joined the scheme. And if we look under conspiracy law or we look at co-schemer law, a person is not responsible for the activities before you joined the scheme. Well, that seems consistent. I mean, if we're just still focusing on Count 5, it seems consistent with their acquittal of her on the two prior wire fraud counts based on they perhaps didn't find specific intent or there wasn't enough evidence. But still, the jury could reasonably conclude that she knew that wire fraud was taking place. I guess I don't see why that's inconsistent at all. What's the inconsistency there? Well, the inconsistency, we're talking, I mean, as of the 21st, if they found her responsible for or having some degree of joining the scheme as of the 21st, you know, there's, it's not clear there that she, what her actions are laundering prosecutors proceeds that predate her involvement. But if she's a freelance money launderer, say, like in my hypothetical, why does that matter that she wasn't involved in the scheme, as long as she knew that the money was a product of this illegal activity? Well, if, and without the jury confusion and the note, I would agree with the Court. But the jury note suggested that they had problems as to what her involvement was. And without some clarity by the Court as to when your liability attaches, there's the, it's potential, and there's a great potential, that count three was, you know, their verdict was based on improper understanding that a person does not join a, does not libel for those actions. Counsel, you're focusing exclusively on a conspiracy concept. You're taking, you're not taking into account the concept of circumstantial evidence, which has long been sufficient for something like this. I would point you, for example, to the Mullins case, dealing with the computer, where there was evidence, a lot of other people had access to the computer, and yet the person used that to commit wire fraud, was upheld, no problem at all. What's the difference here? Well, the difference is, it is, the distinguishing factor between this case and other cases is the confusion as to when she joined a conspiracy. You're talking about the conspiracy aspect. What I'm suggesting, and I think my colleagues are as well, is you don't, they didn't find a conspiracy necessarily, but they did find that there was adequate circumstantial evidence that she, she was well aware of this, she participated in it to the extent that she got these proceeds like the cashier's check, and that's all you need. Well, I, I, and without the, without the jury confusion as to when she joined, if at all, and the, and with the, also with the variance, because there's no evidence, you know, the, the case involved actions of others, because they could not establish that she did the actions, except for the cashier's check, okay, that's on the 21st. Wasn't that? I'm sorry, go ahead. No, please. Wasn't it the, your client who brought in this theory, oh, it must have been other people, it was my roommate, it was a friend? Yes. That, that wasn't the government's theory, correct? Well, the government's theory seemed to, with the vicarious liability, changed. I mean, at first, the theory is, by way of the indictment, is that she was alone, did this. I mean, there, there was no other persons involved in, in the transaction. And so, it was the defense's theory that there were other people involved. Right. Is that right? And that she wasn't involved. So the, so that's why the, the vicarious liability theories was, was so prejudicial to her, because all of a sudden, she was defending her own actions, but now she had to defend others. So, the, the counts and, and the theories are, are, are interrelated, because she was not, she was not involved in any of the, in any of the, in any of the, in any of the indictments. She was prejudiced by not answering the questions regarding when her participation was. Did, did the indictment say that she acted alone? I thought it, it just said there was a scheme to defraud. Scheme to defraud, but she, there was, she was the only one charged. Unlike the case of Stapleton, which talked about that, Stapleton was charged with six other individuals. So, are, are you saying that if, if only one person is charged in the indictment, that, that indicates that only one person was involved in the scheme, and, and that's why there's a, a, a constructive amendment, or is that your theory? Yes. I'm saying if only one person's charged, and the theory goes that one person's involved, and they broaden it to involve others, and, and not linking the defendant to other activities that are done by others, then there's a prejudicial variance. And I seem to have taken my time. Can I just have one minute? Well, I just have one quick question. You keep referring to the jury instruction, and the judge told him go back and read the instruction. What was wrong with the Ninth Circuit instruction? Well, the vicarious instruction really didn't answer the question whether a person is responsible for activities that occur prior to that person joining the, the, the scheme or the conspiracy. And so, so it didn't clearly answer to, to their satisfaction when a person becomes liable. And, and their question to the, to the parties and to the court was, well, when does a person become liable for the activities? And that's, and that's what, that's the error in not answering this question, because a person does not become liable if you didn't participate in the scheme. It didn't, you're not liable for the acts that were done before until you actually participate in the scheme. And of course, they infer that she did because the amount of the cash was checked. Thank you for your answer. Thank you. May it please the Court, good morning. My name is Lori Gray. I represent the United States. The defendant raised four issues in his brief on appeal. None require reversing. And I'll begin with the vicarious liability instruction. Before I start, and I'll go back to the money laundering, the law is clear that just because the jury acquitted on one count doesn't preclude them from considering all that evidence on the other counts, which goes to the points of the questions that, Your Honors, we're asking of defense counsel. With regard to the co-schemer instruction, and defendants claim that that instruction constructively amended the indictment, the record shows that it did not, because a fair reading of the indictment allows for the participation of someone else, and that defendant didn't act alone. The passive voice is used as we set forth in the brief, and the indictment is at excerpt of record 12. That instruction, even though we've upheld it in a couple of cases, it does not seem to answer the question whether someone can be held liable for what the conspirators did before that person, that defendant, got involved in the scheme. And I take it the answer is no. So isn't that instruction somewhat ambiguous? Well, that instruction, Your Honor, is read with the wire fraud instruction. It's not given alone. It's given in conjunction with the substantive instruction. And the wire fraud instruction makes clear that defendant knowingly participated in a scheme or plan to defraud. So it requires the jury to make that knowing finding. Well, I take it that the jury's confusion was, well, she knowingly got involved in this scheme at some point, but she took out the $100,000 check or whatever. Right. So she was a knowing participant in the scheme, but can she be held liable for the two prior wire fraud counts solely because at some point she joined in the scheme? And that seemed to me a little bit ambiguous in the instruction. How does the instruction respond to that? Well, again, the instruction, the Court directed them back to their question, Your Honor, went to instruction number 20. Instruction number 20, which is at SCR 489, is the wire fraud instruction. Instruction 21 is the co-scheme or instruction. But their question, which I would submit was confusing, directed itself specifically to the wire fraud instruction. And the question was internally inconsistent because it said, would defendant be considered a participant in a scheme if she learned of the actions in counts 1 through 3, the wire fraud, after the fact, yet continued to participate? So it sounded like they found she'd previously participated, but what if she continued? And I think it was because of that confusion that the Court said, they specifically entitled it with regard to the wire fraud, so direct them back to the wire fraud. Now, I understand the Court's concern that, well, it's reasonably foreseeability defined, but back at the wire fraud, again, it makes it clear that it had to be knowing. And this instruction, Your Honor, was argued at length in closing argument. Defense counsel emphasized the knowing requirement. At supplemental excerpt of record 398, defense counsel gets up and argues, defendant might be liable for what Ms. Weaver did as long as she knew that the whole thing was going on precisely. She then argues at 399 SCR, the government still has to prove that Sherry Hall knew about the money, and that's exactly right. That's what the instruction made clear, and that's what the Court then instructed the jury, go back to the wire fraud instructions, look at the elements, knowing was in the elements, and the Court had obviously or, excuse me, had previously told the jury, had defined what knowingly is. An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident. That's at the supplemental excerpt of record 486. Kennedy. From your perspective, instruction 20, the wire fraud instruction, you said that's always read with the other. You just mean at least in this case, they are tied together. Well, in my understanding, Your Honor, and looking at the other cases, too, that it's read with whatever the substantive, if it's a mail fraud offense, if it's a wire fraud offense, that the substantive instruction is, yes. And that requires knowledge. I understand. Okay. With regard to the money laundering, again, the defendant makes a lot of arguments about what the jury found and what they had to conclude. There was no special verdict form here, and it's hard to read the tea leaves of what the jury did and why they did, and we're precluded from doing that. But we're not precluded from considering the evidence in the light most favorable to the government. And as this Court said in its en banc decision in Neville's, it will be the rare occurrence where this Court finds that a jury unreasonably found a defendant guilty, and I submit on this record, this is not that rare case. The record and the evidence show that at the get-go, defendant was involved, and that's her PayPal account. That's the very first account that's linked to the fraudulent, excuse me, the Bank of America victim account. And that's the very first one linked, and there's 14 transfers. And with each transfer, an e-mail is sent to shall33 at uReach.com. That's significant, because when defendant calls in to complain, she can't get into her account because it's been locked out as they're investigating fraud. The fraud investigator says, hey, what's your e-mail address? And she says, shall33 at uReach.com. She is aware at the get-go. And then, of course, as Your Honors have highlighted, there's the sheer volume here, 31 transfers over a two-month period of nearly three-quarters of a million dollars. She says to the investigator, I never had more than $36,000 in my account, yet the evidence clearly showed she took out over $210,000 in cashier's checks. And then the defendant says, you don't think about this $102,500 cashier's check? And she says, no, I never had that much money. She says that to him five days after she's in the bank, and there's video evidence of her at the teller counter purchasing the check. There was abundant evidence to show that she was guilty of the count three-wire fraud on which they convicted. And with regard to count five, the $102,500 check, the indictment charges that it came from the specified unlawful activity, which was wire fraud. It wasn't tied to any particular account. And I believe it was you, Judge Acuda, that made the comment that it came from the entire scheme. And indeed, there were several other purchases of cashier's check that totaled that could have been the $100,000 that the indictment charged at paragraph 9. I'm happy to discuss any other questions that you may have on the other counts. Otherwise, I would submit and ask that you affirm the judgment below. Thank you very much. Roberts. Thank you. Counsel, you have some time for rebuttal. Yes, yes, yes. One point that when the Court asked me a question regarding the co-schemers and the proceeds, our – I wanted to point out that our initial – Please speak into the microphone. Our initial argument was that the count 5 was tied into count 3. And that is because how the indictment is read. And we pointed this out in our briefs. The incorporated by reference are counts 1 – actually, 2 and 3 into the money laundering. So those counts were tied into counts 4 and 5, the money laundering count. So the wire fraud – the transfers 2 and 3 were directly tied into 4 and 5. So the government says, well, we can use the entire proceeds. But that is not how the indictment read. And that is our primary position, in addition to the fact that when she joined the scheme. So I don't want to lose track of that's – that is our position, that indeed, the indictment ties in the money laundering to the specific counts of money transfers in counts 2 and 3. And Ms. Hall was acquitted of counts 2, which relates to count 4. Thank you. Thank you very much. The case is now submitted.
judges: Nelson, Smith, Ikuta